**Not Recommended for Publication or Citation**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-CV-346-JBC

GEORGE H. EDWARDS, JR.                                              PETITIONER

VS:                    **MEMORANDUM OPINION AND ORDER**

WARDEN STEPHEN DEWALT                                          RESPONDENT

\*\*\*\*     \*\*\*\*     \*\*\*\*

This matter is ripe for a decision on the instant *pro se* petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, filed by George H. Edwards, Jr., who was at all relevant times confined in the Federal Medical Center ("FMC"), in Lexington, Kentucky.

Edwards filed a previous Section 2241 petition for writ of habeas corpus seeking release from imprisonment. In that matter, *Edwards v. United States Parole Commission*, Civil Action No. 5:08-CV-236-KSF, he challenged the April 14, 2008, decision of the United States Parole Commission ("USPC") against him. On June 26, 2008, the court denied the petition and dismissed the case, without prejudice, for the petitioner's failure to first exhaust the matter by appealing the Commission's decision.

**THE INSTANT PETITION**

On August 18, 2008, the petitioner filed the instant action with pleadings identical to those he filed in the previous proceeding – and additionally, he has now

received and submitted a copy of the National Appeals Board decision which exhausted the appeal process. Edwards states that he was convicted of distributing cocaine in the United States District Court for the Southern District of Illinois, and that on July 26, 1985, he was sentenced to 15 years' imprisonment, to be followed by a special parole term ("SPT") of 10 years. Petitioner further alleges that after the term of imprisonment expired, on February 8, 2000, he commenced his SPT the next day. On July 26, 2001, he violated the SPT conditions, and on December 7, 2001, he was released to continue that SPT, rather than having the parole term "converted to a regular term."

This last term of SPT, which began on December 7, 2001, is the subject of this action. On January 22, 2007, Edwards was arrested by the Federal Bureau of Investigation and charged with extorting a professional athlete in the St. Louis, Missouri, area. The next month, the USPC issued a warrant for him for parole violations. On July 6, 2007, he pled guilty to a wire fraud charge arising out of the extortion attempt and was sentenced to prison for one year and one day by the U. S. District Court for the Eastern District of Missouri.

On December 7, 2007, the USPC's parole violator warrant was executed. Edwards points out that under the Commission's regulations, his parole revocation hearing should have been held within the next 90 days, but it did not occur until March 20, 2008, thirteen (13) days after the deadline. In the resulting April 14, 2008, decision, the USPC found that Edwards had violated his parole by using drugs in 2004

and 2006, and by committing a new crime, the wire fraud, of which he was convicted in July of 2007. The decision also included the following:

> Revoke special parole. None of the time spent on special parole shall be credited. Continue to a presumptive re-parole November 21, 2009 after service of 34 months. The total number of months includes the time spent in custody on the non-parolable term.

Record No. 2 at Exhibit. E.

Edwards alleges that he appealed the USPC's decision on the same grounds he alleges here: that (1) the Commission failed to hold his revocation hearing within 90 days, and thereby forfeited jurisdiction; (2) a dispositional review should have been held within 180 days of placing the detainer, and therefore, the Commission also forfeited its ability to consider the charges; (3) once revoked, a special parole cannot be reimposed – only a regular parole can be imposed; and (4) the first of two parole certificates which he signed before release on this most recent parole on December 5, 2001, provided that he must "remain within the limits of Southern District of Illinois," only until March 1, 2007, thus establishing a liberty interest in release on that date, a liberty interest which was taken without due process, in the April 14, 2008 decision.

The National Appeals Board rejected all of Edwards's claims in its Notice of Action of August 19, 2008. The NAB found no irregularities in the procedures, no loss of jurisdiction as a consequence of any delay or the lack of a five-year termination hearing because the final revocation hearing cured any error in the lack of a dispositional review, no error in the salient factor score, and no mitigating circumstances warranting a different decision.

Having lost his administrative appeal, Edwards came again to this court. In his petition, as amended, he challenges the USPC's 2008 computation of his Salient Factor Score ("SFS") of 3 as being erroneous and violative of his due process rights because it was based on two imprisonments which should not have been counted, one in 1979 and one in 1981.

**THE RESPONSES**

Respondent first relates that while Edwards was free on the December 7, 2001, SPT, Petitioner committed multiple parole violations, at least one in each of the years 2002, 2004, 2005, 2006 and 2007, as was reported by his probation officer. Exhibits [hereinafter "Ex."] 3-11. These violations included an arrest for assault on his daughter and repeated drug tests which were positive for illegal narcotics. They were sufficiently serious to result in the USPC's issuing several letters of reprimand, but each time the Commission decided not to commence revocation proceedings – until 2007.

With regard to the resulting April 14, 2008, decision to revoke Edwards's parole, Respondent informs the court that Petitioner also filed a third action challenging the same USPC decision in 2008, *Edwards v. U.S. Parole Commission*, Lex. No. 08-CV-301-KSF. In that case, the initiating document was a Petition for Writ of Mandamus raising only one claim: that the Commission violated Edwards's due process rights and lost authority over him by failing to conduct the 5-year termination hearing required by 18 U.S.C. § 4211(c)(1). The court t denied that the Commission

lost jurisdiction by not holding the hearing, but it agreed that Edwards was entitled to a hearing. On February 23, 2009, the court ordered a Section 4211 hearing to be held within 90 days.

For his Response to the instant claims, the Warden initially relied on his Response in 08-CV-301 with regard to Section 4211 hearings. As to the supplemental SFS issue, the Warden explains that the computation is in conformity with the paroling guidelines in 28 C.F.R. § 2.20. He points out that the calculation consists of prior criminal history items and results in a score ranging from 0-10, with the higher number indicating a better parole risk. Respondent admits that Petitioner's SFS score of 3 includes scoring the two commitments which Edwards contends are not applicable, and the Respondent also admits that in Petitioner's 1995 revocation of parole, the USPC agreed not to count them.

However, the Respondent's position is that there is no error in having counted the 1979 and 1981 commitments in the 2008 decision, as the Petitioner has never produced any evidence to support his claims that they should be omitted; Edwards's veracity about them was questioned at the time of the 2001 decision; and both were properly counted in the more recent revocations of his parole, in 2001 and 2008.

As to Petitioner's claim that the USPC lost jurisdiction by not holding the dispositional review of the warrant within 180 days, the Respondent counters that there was no violation of 18 U.S.C. § 4214(b)(1) because Edwards was arrested within 180 days after the Commission received notice of the new conviction. As to

5

the revocation hearing being held almost 2 weeks beyond the 90-day post-apprehension period, the respondent admits to tardiness beyond the time set forth in 18 U.S.C. § 4214(c), but he claims that a prisoner is not entitled to habeas relief unless he can show prejudice, which this petitioner has not shown.

Respondent admits that there is case law which supports Petitioner's claim that upon revocation of a special parole term, "the special parole term is extinguished and must be converted to a term of imprisonment from which the offender can be granted regular parole," the respondent citing to *Dolfi v. Pontesso*, 156 F.3d 696, 699 (6th Cir. 1998) in this circuit. However, again the Warden argues that the instant petitioner was not prejudiced. Finally, with regard to the SFS calculation, the warden challenges Petitioner's evidence purporting to show that the 1979 and 1981 commitments did not qualify to be considered in the computation, and he reminds this court of its limited reviewing powers.

**THE REPLY**

Petitioner has filed an unauthorized Reply [Record No. 14] to the warden's initial Response, with several exhibits, which the court has considered. As to facts, he insists that the 1979 conviction ended in probation for two years, not a commitment, as allegedly evidenced in an excerpt from his P.S.I. Report; and the 1981 charges in California, after his conviction was overturned on appeal, were dropped in 1991, when the State prosecutor decided not to re-try him, as evidenced in the attached document showing the return of the detainer. Petitioner claims that only in

6

1995, in omitting both convictions, did the USPC get close to being right.

## DISCUSSION

Edwards was released on special parole on February 8, 2000. Less than 18 months later, on July 26, 2001, Edwards's SPT was revoked for parole violations; he lost the time spent on the SPT; and he had to serve a sentence for the violations. By the end of the year, on December 7, 2001, Petitioner was re-paroled on the SPT which is here at issue.

After Edwards' re-parole on December 7, 2001, he remained free on that STP for 5 years. In fact, the USPC's 2008 Hearing Summary [Ex. 16] reveals that the 5-year mark to consider him for termination of parole under 18 U.S.C. 4211, would have been December 7, 2006. Respondent admits that there was no termination hearing, but stresses that by then, the petitioner had amassed several parole violations and was within days of arrest by the FBI on the new extortion offense.

The Court examines the petitioner's claims in the order presented. To the extent that Edwards has raised the issue about the Section 4211 termination hearing, further relitigation of that matter is barred by the doctrine of *res judicata* because the matter was decided in No. 08-CV-301-KSF. *See Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467 n. 6 (1982); *Vinson v. Campbell County Fiscal Court*, 820 F.2d 194, 197 (6th Cir. 1987).

As to the Commission's purported failure to hold a timely dispositional hearing on the detainer arising from the new criminal offense, the time limit is imposed by 18

U.S.C. 4214(b)(1), which provides the USPC's review "within one hundred and eighty days of notification to the Commission of placement." *Id.* The USPC's first notice of the new conviction, in Missouri, was on August 6, 2007, and Edwards's arrest was on December 7, 2007, within the 180-day period. Thus, there is no violation of statute.

Although the relevant revocation hearing was not held "within ninety days of the date of retaking," as required by 18 U.S.C. 4214(c), but was held 13 days late, Edwards has not shown any prejudice by the delay. *Northington v. U.S. Parole Commission*, 587 F.2d 2 (6th Cir. 1978) (affirming denial of habeas relief to a parolee who had received his revocation hearing 114 days after arrest on the violator warrant).

Petitioner has also claimed that the government "has no authority to impose a second violation term of the SPT, and to have done so is in violation of the law of this Circuit . . . ."

> Special parole was created in 1970 as an additional penalty for all drug offenses and was mandatory in all such cases until the Sentencing Reform Act replaced it with "supervised release." Special parole is governed by 21 U.S.C. § 841, which Congress repealed in 1984, but which still applies to drug crimes committed before November 1, 1987. *Dolfi v. Pontesso,* 156 F.3d 696, 697 (6th Cir.1998) (citations omitted). Special parole differs from regular parole in three respects:
>
>> [F]irst, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than by the Parole Commission; third, if the conditions of special parole are violated, the parolee is returned to prison to serve the entire special parole term, and receives no credit for his time spent in non-custodial supervision, or "street time.

*Urbina v. Thoms*, 270 F.3d 292, 296 (6th Cir. 2001) (quoting *Evans v. United States Parole Comm'n,* 78 F.3d 262, 263 (7th Cir.1996)). Because Edwards was convicted of a drug crime in 1985, prior to November 1, 1987, Title 21, United States Code, Section 841(c) required that he be sentenced to a term of special parole.

Edwards is not the first to challenge the authority of the USPC to impose another term of special parole after revoking his original special parole term. The special-parole-term-versus-regular-parole-term issue is repeatedly raised by prisoners in federal courts, because of the severe statutory penalty for a violation of an SPT. A violation of a condition of special parole requires automatic forfeiture of time spent on an SPT, pursuant to 21 U.S.C. § 841(c), whereas forfeiture (or not) of time spent on regular parole is a matter to be decided by the USPC in its discretion.

The Commission does not have authority under Section 841(c) to impose a new term of special parole. *Dolfi v. Pontesso*, 156 F.3d 696, 698-99 (6th Cir. 1998) Rather, upon revocation of an SPT, that term disappears and can be replaced only by a traditional parole term. See *Hall v. Eichenlaub*, 559 F.Supp.2d 777, 780-81 (E.D. Mich. 2008)(discussing *Dolfi)*.

In this case, however, converting the 2001-2007 special parole term to a regular term of parole does not benefit the petitioner. All of his "street time" on special parole which was forfeited, presumably under 21 U.S.C. § 841, would have been forfeited under the regular parole revocation provisions in 28 C.F.R. 2.52(c)(2), if the parolee is convicted of a new crime committed while on parole, as Edwards was.

9

The result would have been the same. No harm is done, and no claim is stated.

With regard to the Petitioner's challenge to his SFS in the 2008 decision, a chart attached to that decision shows the calculation. Edwards obtained the score of 3 with one point each for his age, his two prior convictions, and his prior commitments. He argues that his score on the prior commitments, which included the 1979 and 1981 commitments, should have been omitted again, as they were in his 1995 consideration for parole; and he details why the commitments do not satisfy the guidelines and should have been omitted again. He points to 28 C.F.R. § 2.20, Paroling policy guidelines, at B.1, which directs as follows:

> Count all prior commitments of more than thirty days (adult or juvenile) resulting from a conviction/adjudication listed under Item A, except as noted below. Also count commitments of more than thirty days imposed upon revocation of probation or parole where the original probation or parole resulted from a conviction/adjudication counted under Item A.

*Id*. Edwards points to the language in the first sentence, "commitments of more than thirty days . . . resulting from a conviction/adjudication," and states that one of commitments which the USPC used did not result from a conviction and the other conviction was reversed by the appellate court.

However, the Petitioner has ignored the rest of the guidelines. By the time that 13 years passed from 1995 to 2008, Petitioner had two revocation proceedings and recommitments for violations of parole and new crimes. By the time of the last one, in 2008, he was, in fact, serving another more-than-30-day commitment for the extortion conviction. Additionally, Edwards has not supplied any evidentiary support

for his allegations that his detentions in 1979 and 1981 do not satisfy the requirements of B.1.

Further, the guidelines for both parole and reparole provide that the time ranges are "merely guidelines," and a decision outside of the guidelines may be made when circumstances warrant. 28 C.F.R. §§ 2.20(b), (c); 2.20(d). All of the considerations in the regulation are geared to determining a prisoner's risk on parole and this prisoner has a long list of sentences for crimes and parole violations, which the USPC obviously did not ignore. Ex. 10-11. The Court finds no mathematical or evidentiary error in deciding this petitioner's SFS.

Next, Edwards has presented two parole certificates which were signed on December 5, 2001, and are identical, except that one shows that his term of special parole would end on March 1, 2007, while the other has the expiration date as March 1, 2011. The petitioner's claim is that the parole contract with the March 1, 2007, SPT expiration date created an expectancy for release on that date, a liberty interest Edwards was sentenced to 10 years on an SPT, as he was; and if all time spent on his STP was forfeited, as it was more than once; and if the 10-year SPT began all over again upon re-parole on March 1, 2001; then the SPT term would expire 10 years later, on March 1, 2011, not the March 1, 2007, date. In short, it is impossible to begin the 10-year SPT again in 2001 and have the term end only 6 years later. The probable mistake simply did not injure Edwards. And granting habeas relief on the mistake by a government employee is bad policy. *See Russie v. U.S. Dept. Justice*,

11

208 F.2d 1445 (9th Cir. 1983).

A convicted prisoner has no inherent right to parole under the Constitution. *See Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987); *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Rather, the grant of parole is a matter of "grace or gift" to persons deemed eligible for reasons found by the parole authority. *See Lynch v. Wingo*, 425 S.W.2d 573, 574 (Ky. 1968); *Allen v. Seabold*, 989 F.2d 498 (6th Cir. 1993).

It is true, however, that the revocation of parole implicates a liberty interest for which some process is due. *Morrissey v. Brewer*, 408 U.S. 471, 482-83 (1972). Due process requires some inquiry as to whether there is probable cause to believe that one has violated his parole and also requires an opportunity for the parolee to contest the alleged violation(s) at a hearing. *Id.* at 485-89. *Morrissey*, however, did not create an inflexible structure for parole revocation procedures. *Id.* at 491; *see also Moody v. Daggett*, 429 U.S. 78, 86 n. 7 (1976); *McDonald v. New Mexico Parole Bd.*, 955 F.2d 631, 633 (10th Cir.1991).

The same procedural requirements applicable to hearings regarding revocation of parole apply to hearings regarding revocation of supervised release. *U.S. v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991). The revocation procedures to which parolees are entitled have long appeared in 18 U.S.C. § 4214 and include a "hearing at the institution to which he has been returned, and the alleged parole violator shall have notice of such hearing, be allowed to appear and testify on his own behalf, and,

unless waived, shall have counsel or another representative" as provided in another subsection. 18 U.S.C. § 4214(c). Edwards has not alleged that these provisions were not followed.

When a decision by the United States Parole Commission is submitted to the district court, the court's review is quite limited. In *Persico v. Gluch*, 948 F.2d 1289 (6th Cir. 1991) (unpublished opinion), the Sixth Circuit described the district court's role as follows:

> Our review of Parole Commission decisions is extremely limited. This court has held that "the Parole Commission's substantive decision to grant or deny parole is an action 'committed to agency discretion' under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2)." *Farkas v. United States*, 744 F.2d 37, 39 (6th Cir. 1984). "'[T]he inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.'" *Hackett v. United States Parole Comm'n*, 851 F.2d 127, 130 (6th Cir. 1987) (quoting *Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir. 1982)).

*Id.* at *1; *see also, Lynott v. Story*, 929 F.2d 228, 229 n.1 (6th Cir. 1991) ("In cases involving habeas relief, the scope of appellate review from decisions of the Parole Commission are [sic] limited to constitutional or other challenges").

In light of the foregoing discussion, the USPC has not violated Edwards's rights under the U.S. Constitution or other federal law. Additionally, there is a rational basis in the record for the USPC's decision to revoke the parole of a recently convicted extortionist and to require the recidivist to serve more time before being eligible for consideration for another parole.

Accordingly, **IT IS ORDERED** as follows:

13

(1) George H. Edwards's Petition for Writ of Habeas Corpus is **DENIED**;

(2) Petitioner's cause of action will be **DISMISSED** from the docket of the Court; and

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.


Signed on  April 8, 2009

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY